E-FILED
Wednesday, 21 August, 2024  01:05:48 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **JACQUELINE SYRSTAD, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 23-2088** |
| **NECA-IBEW WELFARE TRUST FUND,** | |
| **Defendant.** | |

### REPORT & RECOMMENDATION

Before the Court is the Partial Motion to Dismiss Plaintiff's Complaint (#29) filed by Defendant NECA-IBEW Welfare Trust Fund ("the Fund," "the Plan," or "Defendant"). Plaintiffs Jacqueline Syrstad ("Syrstad") and Natalie Wenninger ("Wenninger," and with Syrstad, "Plaintiffs") filed a Response (#33) in opposition. For the reasons discussed below, the Court recommends that Defendant's Partial Motion to Dismiss (#29) be GRANTED in part and DENIED in part.

### I.    Background

According to the Amended Complaint's allegations, the Plan is a self-insured employee benefit plan established by the National Electrical Contractors Association ("NECA") and the International Brotherhood of Electrical Workers ("IBEW") to provide medical benefits to NECA-IBEW employees, members, and their beneficiaries. Plaintiffs are beneficiaries of the Plan. Plaintiffs bring this lawsuit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and allege four main violations of ERISA.

First, Plaintiffs allege Defendant failed to properly calculate the Allowable Charge for medical services Plaintiffs received and thus wrongfully denied or underpaid claims for those services. Second, Plaintiffs allege Defendant failed to provide the necessary explanation for its benefit determination. Third, Plaintiffs allege Defendant failed to

explain which method it used to calculate the Allowable Charge for out-of-network services. Finally, Plaintiffs allege Defendant materially changed the Summary Plan Document's reimbursement terms without amending it or providing notice to Plan participants.

Before this case was transferred to this Court, the Wisconsin District Court dismissed Plaintiff's original Complaint without prejudice. The Wisconsin District Court noted:

> In the present case, the plaintiffs' complaint presents a "fair notice" problem rather than a "plausibility" problem because the plaintiffs have not adequately identified their claims for relief.
>
> The essential problem is that, because the plaintiffs each received treatment … on multiple occasions over a period of years … they each potentially have many separate claims against the Plan—one claim for each date of service or bill—but they have not identified the claims for which they are seeking relief in this action.
>
> ***
>
> Further, the plaintiffs bring separate claims based on alleged deficiencies in EOBs and appeal determinations, but, with one exception, they do not identify the specific EOBs or appeal determinations at issue. Each individual EOB and appeal determination potentially gives rise to a separate claim for relief, so unless the plaintiffs identify the ones for which they are seeking redress, the complaint cannot satisfy the fair notice requirement.
>
> ***
>
> The complaint's allegations concerning a Plan modification or reduction in benefits are also deficient. The gist of this claim seems to be that because the plaintiffs believe that the Plan has paid less for NEA's services than it paid "to other providers in the past for similar services," the Plan must have modified its practices at some point in time. (Compl. ¶ 58.) But the complaint does not allege the approximate time frame in which the plaintiffs noticed a difference in reimbursement levels or allege when the plaintiffs believe that a Plan modification occurred. It is not even clear whether the plaintiffs think that the modification occurred prior to 2016, when the plaintiffs first received services from NEA, or whether they think that it occurred at some point during the multi-years periods in which they received treatment. The Plan cannot be expected to investigate these vague allegations about a modification that the plaintiffs subjectively believe occurred at some unknown moment in time.

***

> For these reasons, I will dismiss the complaint with leave to amend. In their amended complaint, the plaintiffs should take care to make clear what their claims are. Are they seeking benefits for services rendered as long ago as February 2016, or are they seeking benefits only for more recent treatment by NEA? What EOBs and appeal letters were deficient, and what remedy do the plaintiffs seek in connection with those EOBs and appeal letters? When did the alleged Plan modification occur? Once the plaintiffs file a complaint that clearly identifies their claims, the Plan may renew its motion to dismiss. I note that the Plan's current motion argues that certain claims fail as a matter of law. I have not addressed these arguments because I do not believe it makes sense to do so until the plaintiffs clearly identify their actual claims.

(Order, #25 at 10-13).

Subsequently, Plaintiffs filed their Amended Complaint.

**A.    Facts**

The facts are drawn from Plaintiffs' Amended Complaint and are accepted as true for purposes of this Order. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1095 (7th Cir. 2015).

The Fund is administered by a joint labor-management Board of Trustees and is a medical employee benefit plan governed by ERISA. The Fund, as the Plan Administrator, is the named fiduciary of the Plan. The Plan Administrator, through the Board of Trustees, exercises discretionary authority and control over administering the Plan and managing and disposing Plan assets, and has the final discretionary authority to determine eligibility for Plan benefits and to interpret and construe the Plan's terms. At all times relevant to this action, Plaintiffs were Plan beneficiaries, as eligible employees and/or members and participants under the Plan.

Plaintiffs allege the Plan terms that apply to their claims appear in the 2013 Summary Plan Description ("SPD" or "Plan Document"), which they attached to their original Complaint and incorporate into their Amended Complaint by reference. The 2013 SPD provides that Plan participants and beneficiaries can receive services from an out-of-network provider, meaning a health care provider who has not entered into an agreement with the Plan or the Plan's third-party administrator. Plan participants and

beneficiaries will be responsible for any charge for a service rendered by an out-of-network provider that is more than the Plan pays for that service. An out-of-network provider can "balance bill" the member for the difference between the billed charges and the amount the Plan pays.

The claims at issue relate to medical services Plaintiffs received from Neurosurgery and Endovascular Associates, S.C. ("NEA"), which were submitted on Plaintiffs' behalf for reimbursement to the Fund. NEA is a medical provider that specializes in neurosurgery. NEA is an out-of-network provider, meaning that it does not have a contract with the Plan or its third-party administrator.

According to the Plan, it pays an out-of-network provider's "Allowable Charge." The 2013 SPD defines an "Allowable Charge" as follows:

**Allowable Charge:**

- With respect to a network (PPO) provider, the term "Allowable Charge" is the negotiated fee/rate set forth in the agreement with the participating network professional provider, facility or organization and the Plan.

- With respect to an out-of-network (non-PPO) provider, the "Allowable Charge" means the amount determined by the Board of Trustees that the Plan will pay for a particular service or supply, as determined by the organization with which the Fund contracts to make such a determination. Under no circumstances will the Plan pay an Allowable Charge for out-of-network services or supplies that is determined by any provider, facility or other person or organization other than the Board of Trustees, or organization designated by the Board of Trustees.

- The Board of Trustees has determined Allowable Charge to mean the amount most consistently charged by a licensed physician or other professional provider for a given service. An Allowable Charge refers to a charge that is within the range of usual charges for a given service billed by most physicians or other professional providers with similar training and experience in a given geographic area. When considering the range of usual charges, the Plan may consider discounted rates allowed by network providers as a basis for Allowable Charges.

(#1, Ex. 1 at 14).

The 2013 SPD also provides:

- **Coinsurance:** Once you or your dependents meet the Deductible, the Plan pays a percentage of Covered Medical Expenses and you pay the rest. Benefits are paid based on Allowable Charges for the duration of an Injury or Sickness. The Coinsurance percentage the Plan pays varies depending on whether you use a PPO or non-PPO provider. If you or your dependent use a:

  - *PPO provider,* the Plan pays 90% of Allowable Charges, which requires you to pay the remaining 10% of Covered Medical Expenses, up to the Out-of-Pocket Maximum; or

  - *Non-PPO provider,* the Plan pays 75% of Allowable Charges, which requires you to pay the remaining 25% of Covered Medical Expenses, up to the Out-of-Pocket Maximum.

(#1, Ex. 1 at 39-40).

Plaintiffs allege that, using the "Allowable Charge" methodology described above, the Plan must collect and maintain records of provider charge information by area and reimburse charges consistent with its records. Plaintiffs allege that using a third-party's data alone, without the Board of Trustees independently verifying and inquiring as to whether the third-party's data is consistent with the Plan, violates the 2013 SPD language. Plaintiffs allege that the out-of-network charges for similar services in the area in which NEA is located are generally around the 90th percentile of the FAIR Health database.

Plaintiffs provide the following table, asserting that it includes the NEA-rendered, services to Wenninger and Syrstad that are at issue in this lawsuit, as well as the respective billed amounts for those services, and the Fund's payment of those amounts (the "Allowed" column, or the "Amount Paid" column):

**Wenninger:**

| Date of Service | Procedure Code | Medical Condition[1] | Claim No. | Billed | Allowed |
|---|---|---|---|---|---|

---

[1] These medical condition descriptions have been redacted because they include Protected Health Information.  However, the parties or their counsel possess the redacted information in an unredacted format.

5

| | | | | | |
|---|---|---|---|---|---|
| 2/2/2017 | 99214 | | | $396.00 | $158.00 |
| 2/3/2017 | 72148 - TC | | GZP251 | $2,093.00 | $441.00 |
| 3/2/2017 | 72141-TC | | HBC310 | $2,573.00 | $407.00 |
| 3/2/2017 | 99214 | | | $396.00 | $158.00 |
| 4/10/2017 | 99213 | | | $241.00 | $106.00 |
| 4/27/2017 | 6449.0 | | | $2,650.00 | $487.50 |
| 4/27/2017 | FACILITY | | | $3,725.00 | $3,159.38 |
| 6/19/2017 | 99213 | | | $241.00 | $106.10 |
| 6/29/2017 | 64490, 64491, 64492 | | GYG050 | $7,350.00 | $772.50 |
| 6/29/2017 | FACILITY | | GYG046 | $7,725.00 | $772.50 |
| 7/17/2017 | 99213 | | | $241.00 | |
| 7/20/2017 | 64633', 64634 | | | $7,499.00 | $7,499.00 |
| 7/20/2017 | FACILITY | | GZJ723 | $7,040.00 | $986.50 |
| 9/7/2017 | 99213 | | | $241.0.0 | $106.00 |
| 9/28/2017 | 64493, 64494, 64495 | | | $6,550.00 | $6,550.00 |
| 9/28/2017 | FACILITY | | HDB947 | $6,895.00 | $1,212.00 |
| 10/26/2017 | 99213 | | | $241.00 | $106.00 |
| 11/2/2017 | 64493,64494,64495 | | HFS826 | $6,550.00 | $1,212.00 |
| 11/2/2017 | FACILITY | | HGP87J | $6,918.40 | $1,212.00 |
| 11/8/2017 | 64772 | | HJM433 | $29,697.00 | $4,065.01 |
| 11/8/2017 | ASSISTANT | | HJM326 | $29,699.40 | $271.00 |
| 12/12/2017 | 72158-TC | | HHMJ26 | $4,699.80 | $1,212.00 |
| 12/14/2017 | 73630-TC | | IIKL047 | $1,850.00 | $25.00 |
| 12/18/2017 | 73700-TC | | HKL046 | $1,850.00 | $137.00 |
| 2/22/2018 | 99213 | | | $241.00 | $106.00 |
| 3/1/2018 | 99214 | | | $396.00 | $168.00 |
| 3/1/2018 | 72141-TC | | HVF'247 | $2,575.00 | $219.30 |
| 4/12/2018 | 64633,64633,99152 | | JQR0-15 | $5,854.00 | $4,114.00 |
| 4/12/2018 | FACILITY | | .JMK398 | $6,725.00 | $2,767.00 |
| 6/25/2018 | 99213 | | | $241.00 | $106.00 |
| 10/29/2018 | 99213 | | | $241.00 | $106.00 |
| 11/12/2018 | 64493, 64494 | | KHZ323 | $5,175.00 | $2,484.15 |
| 11/12/2018 | FACILITY | | KHX486 | $6,313.30 | $2,871.65 |
| 12/3/2018 | 64493,64494 | | KHX660 | $5,238.30 | $2,484.15 |
| 12/3/2018 | FACILITY | | KJS25I | $6,250.00 | $4,968.30 |
| 12/10/2018 | 99214 | | KLN883 | $396.00 | $168.00 |
| 12/17/2018 | 64633,64634 | | KJC643 | $6,329.00 | $2,767.00 |
| 12/17/2018 | FACILITY | | KJS2S0 | $6,725.00 | $5,534.00 |

| 2/27/2019 | 64772 | | LRT2.99 | $29,850.00 | $3,655.56 |
| 2/27/2019 | ASSISTANT | | LWV2SS | $29,684.40 | $379.42 |
| 7/11/2019 | 99213 | | LSQ207 | $241.00 | $241.00 |
| 8/26/2019 | 99213 | | LXHl39 | $241.00 | $226.00 |
| 9/26/2019 | 64633,64634 | | LXR577 | $6,329.00 | $3,349.50 |
| 9/26/2019 | FACILITY | | LXZ859 | $6,725.00 | $2,812.50 |
| 2/20/2020 | 99214 | | MWY627 | $396.00 | $227.00 |
| 4/30/2020 | 72141 -TC | | | $2,575.00 | $771.00 |
| 4/30/2020 | 99214 | | | $396.00 | $153.00 |
| 5/7/2020 | 62321 | | | $2,898.40 | $535.40 |
| 5/7/2020 | FACILITY | | | $3,925.00 | $655.60 |
| 6/18/2020 | | | NVB840 | $2,875.00 | $401.55 |
| 6/18//2020 | | | PDH385 | $3,925.00 | $491.70 |
| 8/27/2020 | | | PDH397 | $2,875.00 | $401.55 |
| 8/27/2020 | | | PJW979 | $3,948.00 | $655.60 |
| 10/22/2020 | | | PFM081 | $5,100.00 | $685.80 |
| 10/22/2020 | | | PDP003 | $6,123.40 | $838.20 |
| 11/5/2020 | | | PBM918 | $5,100.00 | $514.35 |
| 12/3/2020 | | | PDL482 | $6,123.40 | $661.25 |
| 12/3/2020 | | | PFN497 | $5,854.00 | $1,207.80 |
| 12/3/2020 | | | PVD202 | $6,725.00 | $0.00 |
| 4/22/2021 | | | 2021141 DW 7343241 | $241.00 | $0.00 |

| Wenninger Total Amount Billed | Wenninger Total Amount Paid | Wenninger Amount Owed |
|---|---|---|
| $371,101.60 | $78,888.82 | $243,323.38 |

**Syrstad:**

| Date of Service | Amount Charged | Amount Paid | Claim No. |
|---|---|---|---|
| 1/27/2021 | $18,947.60 | $281.84 | PPB744 |
| 1/27/2021 | $22,449 | $5,385.70 | PPB745 |
| 1/27/2021 | $4,215.80 | $609.20 | PTH670 |
| 1/21/2021 | $4,825.00 | $609.20 | PTH670 |
| 1/11/2021 | $396.00 | $222.00 | PPK005 |
| 1/25/2021 | $396.00 | $222.00 | PPK007 |
| 1/21/2021 | $396.00 | $222.00 | PPK008 |
| 1/21/2021 | $5,137.70 | $2,044.00 | PNQ568 |

| | | | |
|---|---|---|---|
| 1/21/2021 | $6,198.40 | $913.80 | |
| 6/14/2021 | $270.00 | $98.72 | 2021208CZ2929 |
| 8/16/2021 | $270.00 | $98.72 | |
| 7/8/2020 | $1,250.00 | $216.00 | NWV818 |
| 12/19/2019 | $6,250.00 | $420.11 | MNT283 |
| 12/19/2019 | $5,658.00 | $449.60 | MLH967 |
| 11/14/2019 | $6,250.00 | $393.08 | MNQ912 |
| 11/14/2019 | $5,658.00 | $451.52 | MGH570 |
| 5/22/2019 | $37,500.00 | $61.56 | PNY691 |
| 5/22/2019 | $37,500.00 | $1,154.16 | MBF636 |
| 4/8/2019 | $6,250.00 | $1,762.50 | KZW593 |
| 4/8/2019 | $5,698.00 | $2,350.00 | LGT382 |
| 3/21/2019 | $6,250.00 | $2,350.00 | LKR875 |
| 3/21/2019 | $5,698.00 | $2,268.68 | LFB969 |
| 2/11/2019 | $3,302.00 | $648.76 | KRF434 |
| 12/7/2018 | $1,500.00 | $310.50 | KJS245 |
| 12/7/2018 | $924.00 | $310.00 | KHX662 |
| 8/3/2018 | $924.00 | $147.00 | JVF886 |
| 2/21/2018 | $3,058.00 | $573.24 | HSJ451 |
| 12/14/2017 | $6,238.30 | $796.50 | HHY588 |
| 12/14/2017 | $5,284.00 | $796.50 | HHY587 |
| 10/24/2017 | $1,500.00 | $755.00 | HHP148 |
| 4/10/2017 | $5,825.00 | $613.00 | GNR574 |
| 4/10/2017 | $5,284.00 | $459.75 | 201714QR0877 |
| 1/16/2017 | $5,775.00 | $225.00 | 2017086QR0828 |

| Syrstad Total Amount Billed: | Syrstad Total Amount Paid: | Syrstad Amount Owed: |
|---|---|---|
| $227,077.80 | $31,997.64 | $195,080.16 |

Plaintiffs allege that the above services rendered by NEA are covered medical services under the Plan and that they timely submitted their respective claims (the "Claims") detailed above.

Plaintiffs allege the amount billed for the Claims was reasonable considering the treatment's complexity and the level of skill and experience required for the healthcare procedures and was consistent with the usual and customary charges in the area. Plaintiffs allege the amount billed for the Claims was also within the amount most consistently charged by a licensed Physician or other professional provider for the

rendered service. Further, Plaintiffs allege that the amount charged for the Claims was within the range of usual charges for a given service billed by most Physicians or other professional providers with similar training and experience in the given geographic area.

Plaintiffs allege that upon receiving Plaintiffs' requests for payment, Defendant constructively denied the Claims by drastically underpaying them, which constitutes an adverse benefit determination and breach of Plaintiffs' rights under the Plan.

The 2013 SPD provides that if Defendant partially or wholly denies a claim for benefits, the Plan member will receive an Explanation of Benefits ("EOB") that will include:

A. The specific reason or reasons for the denial;

B. Reference to the specific provisions of the Plan document on which the denial is based;

C. A description of any additional material or information the Plan participant or beneficiary must provide to perfect the claim, and an explanation of why that material or information is needed;

D. A description of the steps the Plan participant or beneficiary must take to appeal the denial of the claim and the time limits applicable to such procedures; and

E. The Plan participant or beneficiary's right to bring civil action under ERISA after the appeal if they disagree with the appeal decision.

Plaintiffs allege Defendant's denials of Plaintiffs' Claims in the EOBs were deficient because they did not, for example, give adequate explanations or guidance as to how Defendant came to its conclusions. Plaintiffs do not identify any specific EOB they claim was deficient in this respect.

Plaintiffs assert they timely appealed the Fund's adverse benefits determinations.

The Plan Document provides that if the appeal is denied (partially or completely), the beneficiary will receive a written notice that will include:

A. The specific reason or reasons for the denial;

B.  Specific references to pertinent provisions of the Plan document on which the denial is based;

C.  A notice of the participant or beneficiary's right, upon request and free of charge, to have reasonable access to, and copies of, all documents, records and other information relevant to their claim for benefits;

D.  A description of any voluntary appeal procedures offered by the plan and the beneficiary's right to obtain information about the procedures;

E.  Notice of the beneficiary's right to bring civil action under ERISA or to appeal to an external independent review organization; and

F.  Notification of whether the denial relied on any internal rule, guideline, protocol or other special criterion in making the adverse determination.

For Syrstad, Defendant's Claim Appeal Committee held a meeting on January 19, 2022, to review and consider Syrstad's appeal. The same day, it issued an appeal denial letter stating that "the Committee determined to uphold the benefit determination of the Fund Office. Please see the attached document for additional appeal information including the claims that the Committee considered. Consequently, the purpose of this letter is to notify you of the denial of your appeal, the basis for that denial, and your additional rights." There was no "attached document" to that correspondence. After Plaintiffs' counsel notified the Fund's counsel that, as of March 9, 2022, the Fund still had not provided the "attached document" referenced in the Fund's January 19, 2022, appeal denial, on March 21, 2022, the Fund's counsel indicated via email that he would look into the situation. Plaintiffs allege that when the Fund provided the "attached document," the "attached document" did not provide any basis or rationale for the benefit denial.

For Wenninger, Defendant's Claim Appeal Committee did not provide documents until April 12, 2022. On June 19, 2020, Plaintiffs' counsel mailed a letter to Defendant regarding a claim for benefits and requested relevant information. Defendant initially responded on November 30, 2020, indicating Defendant would not provide any of the requested information. However, Defendant responded on April 12, 2022, by providing letters to Wenninger that Defendant alleges were previously sent to her. One letter was

dated January 15, 2018, and another letter was dated January 27, 2020. In the letters, there was no basis or rationale for the decision, other than the conclusion that the charges were in excess of the "Allowable Amount." These letters were never received by Wenninger or her counsel before April 12, 2022, even after several requests and other ongoing correspondence prior to then.

Plaintiffs allege that for several years after Defendant committed to the 2013 SPD's terms, Defendant paid out to other Plan participants who had similar medical services to the medical services in this lawsuit at an amount that was at, or substantially near, the usual and customary rate charged for those medical services. However, at some point at or near the earliest date of service noted in Plaintiffs' Claims chart, Defendant – without amending the 2013 SPD, or providing any notice of any Plan modifications to Plan participants – materially modified its handling of Plan participants' claims.

Plaintiffs allege that at some point at or near the earliest date of service noted in their Claims chart, Defendant materially modified its handling of Plan participants' Claims, because as of the earliest date of service noted above, Defendant's application of those terms resulted in Plaintiffs and other Plan participants receiving significantly reduced payments – and devastating financial obligations – as compared to their similarly situated Plan participants and their service providers that Defendant paid before Plaintiffs' Claims arose. Plaintiffs allege that, after Defendant's undisclosed, material modification of its handling of Plan participants' claims, Defendant began paying less than 10% of the usual and customary rate for said services, as reflected in the charts included above.

Even assuming Defendant did not materially change the SPD's reimbursement terms, Plaintiffs allege that Defendant's habit or practice of applying those reimbursement terms changed over time so that, by the time Plaintiffs received their treatment, Plaintiffs and other Plan participants in Plaintiffs' position received dramatic underpayments as compared to earlier Plan participants.

B.      **Counts**

In their Amended Complaint, Plaintiffs allege two counts against Defendant.

Count I is claim for benefits under ERISA and to enforce and clarify rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Count I contains two claims. First, Plaintiffs allege Defendant did not properly calculate the Allowable Charge for the services Plaintiffs received and thus wrongfully denied or underpaid claims for those services. Second, Plaintiffs allege Defendant failed to provide the necessary explanation for its benefit determinations.

Count II is a claim for other appropriate relief and to redress violations of ERISA and enforce the terms of the Plan and ERISA under 29 U.S.C. § 1132(a)(3). Count II appears to contain three claims. First, Plaintiffs allege Defendant failed to specify which method the Plan used to calculate the Allowable Charge for out-of-network services. Second, Plaintiffs allege Defendant materially changed the 2013 SPD's reimbursement terms without amending the 2013 SPD or notifying Plan participants. Third, Plaintiffs allege Defendant breached its fiduciary duties.

## II.   **Legal Standard**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Sloan*, 901 F.3d at 894. But where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). While a complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion, and accordingly, threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice. *Id.* The plausibility standard calls for a "context-specific" inquiry that requires the court to draw on its judicial experience and common sense. *Id.* When ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).

III.    **Analysis**

Plaintiffs allege two counts against Defendant. Defendant moves to dismiss both counts.

A.    **Count I**

Count I is claim for benefits under ERISA and to enforce and clarify rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Under 29 U.S.C. § 1132(a), a participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff bringing a claim under this provision "is essentially asserting his or her contractual rights under an employee benefit plan," and such claims "are creatures of contract law." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992).

Defendant argues that many claims in Count I should be dismissed because they are time-barred. In addition, Defendant argues that Count I fails to state a claim.

1.    **Statute of Limitations**

When a defendant argues a complaint should be dismissed for failing to comply with a statute of limitations, "[d]ismissal under Rule 12(b)(6) [is] irregular, for the statute of limitations is an affirmative defense." *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004). Because "complaints need not anticipate and attempt to plead around

defenses," *id.,* a motion to dismiss based on failing to comply with the statute of limitations should be granted only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005). In other words, the complaint must "plainly reveal [ ] that [the] action is untimely under the governing statute of limitations." *Id.* Dismissal is appropriate "if the claim is 'indisputably time-barred.'" *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)).

ERISA "does not contain a statute of limitations for the bringing of civil actions" under § 1132(a)(1)(B). *Jenkins v. Loc. 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251 (7th Cir. 1983). Thus, courts normally borrow "a statute of limitations from an analogous state law." *Id.* However, if a policy contains a provision specifying a shorter limitations period, a federal court "must give effect to the policy's limitations provision unless [the court determines] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013) (internal citation omitted).

Defendant argues that any of Plaintiffs' claims incurred more than three years prior to the date the Complaint was filed are barred by the Plan's contractual time limitation. Plaintiffs argue that the purported contractual time limitation is unenforceable and that their claims are timely under either Illinois or Wisconsin law. Regardless, Plaintiffs argue, their claims are timely because their claims did not accrue until 2022, when Defendant provided Plaintiffs a clear repudiation of their claims.

The parties dispute whether the Plan has a contractual time limitation that applies. Plaintiffs allege that the Plan is governed by the 2013 SPD, which states:

> This booklet contains only highlights of certain features of the NECA-IBEW Welfare Trust Fund Base Plan for Active Employees and their dependents in effect as of January 1, 2013. Full details are contained in the Plan Documents, Trust Agreements, insurance contracts and the collective bargaining agreements that establish the Plan provisions. If there is a discrepancy between the wording here and the Plan Documents that establish the Plan, the Plan Document language will govern.

(#1, Ex. 1 at 6).

Because the 2013 SPD provides that the full details are contained, in part, in the relevant Plan Documents, Defendant argues that the 2013 SPD is merely a summary of the Plan Documents, that the 2013 SPD cannot be read in isolation, and that the applicable Plan Documents must be considered part of the pleadings. Defendant's Motion to Dismiss attaches a declaration stating that prior to January 1, 2018, the Fund's governing documents included the 2013 SPD and the 2012 Plan Document; prior to 2020, the governing documents included the 2013 SPD and the 2018 Plan Document; and that effective July 1, 2020, the governing documents included the combined 2020 SPD and Plan Document. Thus, Defendant argues, Plaintiffs' Claims from January 2017 through December are 2018 governed by 2013 SPD and 2012 Plan Document, from January 2018 through June 2020 are governed by 2013 SPD and 2018 Plan Document, and from July 2020 through the present are governed by the combined 2020 SPD and Plan Document.

Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). In addition, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994). "[T]his is a narrow exception" to the general rule that when additional evidence is attached a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 ... or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998). Although narrow, this exception is "aimed at cases interpreting, for example, a contract." *Id.*

As described further below, even if this Court were to consider the relevant Plan Documents as part of the pleadings and find that they govern the Plan, there is presently insufficient information to decide whether Plaintiffs' claims in Count I are time-barred because the Amended Complaint's allegations do not "set forth everything necessary to satisfy the affirmative defense." *Lewis,* 411 F.3d at 842.

The 2012 Plan Document and 2018 Plan Document contain identical contractual limitation provisions stating that "no legal or equitable action … may be commenced later than two years from the date the claim was required to be received by the Plan" and that "claims and all required information must be received within one year from the date of service or the claim will be denied." Thus, the 2012 Plan Document and 2018 Plan Documents provide that plaintiffs have three years from the date a claim is incurred to file a complaint (one year to submit to the Plan and two years thereafter to file).

Plaintiffs argue, however, that Defendant did not provide Plaintiffs with ERISA-compliant notices that included a limitations period, and therefore, that the purported contractual limitation period is unenforceable.

Section 503 of ERISA requires every employee benefit plan to

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)–(2).

Two provisions in the implementing regulations, 29 C.F.R. § 2560.503-1(j)(4)(ii) and 29 C.F.R. § 2560.503-1(g)(1)(iv), address the issue of limitations periods. Section (g)(1) states:

(1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination .... The notification shall set forth, in a manner calculated to be understood by the claimant—

***

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

***

29 C.F.R. §§ 2560.503-1(g)(1), (1)(iv).

While the Seventh Circuit has not addressed this issue, three other federal courts of appeals have held that (g)(1)(iv) requires a plan administrator to disclose the contractual limitations period. *See Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 134–137 (3d. Cir. 2015); *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503, 505 (6th Cir. 2014); *Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 680 n.7 (1st Cir. 2011). The appropriate remedy for violating this notice requirement "is to set aside the plan's time limit and apply the limitations period from the most analogous state-law cause of action." *Mirza*, 800 F.3d at 131. Under Illinois law, the most analogous Illinois statute of limitations is the "10-year period for suits pertaining to written contracts." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996). Under Wisconsin law, "the most analogous state statute of limitations is Wisconsin's six-year period for bringing contract claims under Wisconsin statute § 893.43." *Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 873 (7th Cir. 1997).

Questions remain as to whether the 2012 and 2018 Plan Documents govern the Plan and whether the Plan provided adequate notice of the contractual limitations provision in its denial letters. Thus, dismissal on statute of limitations grounds is inappropriate because the claim is not "indisputably time-barred." *Small*, 398 F.3d at 898.

Defendant argues that if Plaintiffs are permitted to proceed on their barebones allegations, the statute of limitations in these types of cases will never run because a plaintiff can simply allege that he never received responses from a plan. While Defendant's point is well taken, "complaints need not anticipate and attempt to plead around defenses." *N. Trust Co.,* 372 F.3d at 888. Plaintiffs' Amended Complaint does not "plainly reveal" that certain claims under Count I are time-barred. *Lewis,* 411 F.3d at 842.

Accordingly, the Court recommends that the District Court deny Defendant's request to dismiss any of Plaintiffs' claims within Count I as time-barred. Obviously, Defendant may raise this defense again once the evidence relating to it is more fully developed.

### 2.     Failure to State a Claim

Count I contains two claims under 29 U.S.C. § 1132(a). First, Plaintiffs allege Defendant wrongfully denied or underpaid claims for services. Second, Plaintiffs allege Defendant failed to provide the necessary explanation for its benefit determination.

Defendant argues these claims should be dismissed because they fail to state a claim.

### a.     Claim for Benefits

Plaintiffs allege Defendant did not properly calculate the Allowable Charge for the services Plaintiffs received and thus wrongfully denied or underpaid claims for services. For relief, Plaintiffs ask that they be awarded benefits due under the Plan and that the Court enforce Plaintiffs' rights under the Plan, including that Defendant be ordered to pay in full for Plaintiffs' Claims, pursuant to the Plan, which remain unpaid or underpaid and outstanding.

Defendant argues that most of Plaintiffs' claims should be dismissed with prejudice because Plaintiffs have failed to identify each of the claims for which they are seeking relief.

"The first and critical allegation" of a violation of § 1132(a)(1)(B) is that the plaintiff was "entitled to benefits under the terms of an employee-benefits plan." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). However, "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Griffin v. TeamCare*, 909 F.3d 842, 845 (7th Cir. 2018) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018)). Plaintiffs sometimes "attach the relevant plan documents to the complaint as insurance against the risk that the complaint's description of the plan's terms is ambiguous or otherwise deficient." *Brooks*, 729 F.3d at 764.

Additionally, the complaint must "provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*, 2017 WL 5462180, at *2 (N.D.

Ill. Nov. 14, 2017). This includes "enough basic factual information regarding each of the specific claims that [ ] are actually at issue." *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.* , 2011 WL 13213620, at *3 (E.D. La. Apr. 27, 2011); *see also Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, 2018 WL 2222854, at *6 (W.D. Tex. Apr. 20, 2018) (finding information regarding "(1) the insured's name; (2) the plan or the terms of the insured's plan that was allegedly violated; and (3) the services provided under the plan," "paramount" to sufficiently state a claim for ERISA benefits).

In support of their claim that Defendant wrongfully denied or underpaid claims for services, Plaintiffs provide charts listing the dates of service, billed amounts, paid amounts, and other relevant information such as procedure codes and claim numbers for all the Claims at issue in this lawsuit. (#26 ¶ 25). Plaintiffs have clearly identified the Claims they allege Defendant wrongfully denied or underpaid and for which they are seeking relief. The Wisconsin District Court directed Plaintiffs to identify the claims for which they are seeking relief. They have done so. Thus, they have provided fair notice of their claims.

Plaintiffs also sufficiently allege facts to state a claim for relief. They have identified the relevant 2013 SPD terms regarding allowable amounts for covered out-of-network services, which they allege Defendant underpaid. They have also attached the relevant plan document, the 2013 SPD, which they allege governs the claims at issue in this case. Additionally, as noted above, Plaintiffs provide charts listing dates of service, billed amounts, paid amounts, and other relevant information such as procedure codes and claim numbers for all the Claims at issue here. Further, they allege these Claims were covered services under the Plan because they were medically necessary and not subject to any exclusion. (#26 ¶ 26, 44).

Defendant argues that Plaintiffs' allegations relating to its claim for benefits are conclusory and therefore fail to state a valid claim for relief. For example, Defendant asserts, although Plaintiffs allege they timely appealed the adverse benefits determinations, they do not allege when they appealed each adverse benefit determination or whether they appealed every Claim or only some Claims.

The Seventh Circuit has interpreted ERISA to require plaintiff to exhaust a plan's administrative remedies prior to bringing suit. *Schorsch v. Reliance Standard Life Ins. Co.,* 693 F.3d 734, 739 (7th Cir. 2012). Failing to exhaust administrative remedies includes failing to timely appeal a denial of benefits. *Gallegos v. Mount Sinai Med. Cntr.,* 210 F.3d 803, 808 (7th Cir. 2000). "The preference in this Circuit is to require the exhaustion of administrative remedies before a plaintiff may file a federal claim alleging an ERISA violation." *Koenig v. Waste Mgmt., Inc.,* 76 F.Supp.2d 908, 912 (N.D.Ill.1999) (citing *Robyns v. Reliance Standard Life Ins. Co.,* 130 F.3d 1231, 1235 (7th Cir.1997)).

Some courts in the Seventh Circuit have found that the "failure to exhaust remedies" requirement is not an element of an ERISA claim, but an affirmative defense. *Moore v. ABB Power T&D Co. Inc.,* 2000 WL 1902185, at *1 (S.D. Ind. Dec. 13, 2000). Others have found that "a plaintiff is required to provide sufficient allegations in her complaint that will at least allow for an inference that she exhausted her administrative remedies." *Ahr v. Commonwealth Edison Co.,* 2005 WL 6115023, at *4 (N.D. Ill. Feb. 24, 2005).

The Court need not weigh in on this split because Plaintiffs allege they timely appealed the adverse benefits determinations. (#26 at ¶35). This allegation, while bare, is sufficient to "provide a general allegation that would allow for an inference that the exhaustion requirement is met …." *Id.* at *6. Drawing all inferences in Plaintiffs' favor, as the Court is required, Plaintiffs' Amended Complaint contains sufficient facts to state a plausible claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Thus, the Court recommends that Defendant's request to dismiss Plaintiffs' claim for benefits within Count I be denied.

### b.    Explanation of Benefit Determination

Within Count I, Plaintiffs also allege that Defendant failed to provide the necessary explanation for its benefit determinations. For relief, Plaintiffs ask the Court to clarify and enforce Plaintiffs' rights under the Plan, including declaratory and injunctive relief that Defendant be required to specify the Allowable Charge used under the terms of the Plan and that Defendant provide notice of the method used to calculate the Allowable Charge and Plaintiffs' cost-sharing responsibility. In addition, Plaintiffs ask that Defendant's

previous denial of benefits decisions be entitled to no deferential review, and instead be reviewed using a *de novo* standard of review.

Defendant argues that most of Plaintiffs' Claims should be dismissed with prejudice because Plaintiffs have failed to identify each individual EOB and appeals determination that was purportedly deficient.

ERISA § 1133, the basis for this claim, requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1); 29 U.S.C. § 1132(a)(1)(B) (statutory enforcement provision for § 1133 violations). While Plaintiffs do not cite ERISA § 1133 in their Amended Complaint, they cite 29 C.F.R. § 2560.503–1(g), (j), which describes the manner and content required for benefit determination notifications.

In its Order dismissing Plaintiffs' original Complaint, the Wisconsin District Court directed Plaintiffs to allege which EOBs and appeal letters were deficient and what remedy Plaintiffs seek in connection with those EOBs and appeal letters. Plaintiffs have not done so.

Like in their original Complaint, Plaintiffs only generally allege that "Defendant's denials of Plaintiffs' Claims in the EOB were deficient because they did not, for example, give adequate explanations or guidance as to how Defendant came to its conclusions." (#26 ¶ 34). They do not identify any specific EOB. The only denial letters Plaintiffs specifically identify are the January 19, 2022, denial letter directed to Syrstad and the January 15, 2018, and January 27, 2020, denial letters directed to Wenninger. (#26 ¶ 39-40). Like the original Complaint, the Amended Complaint does not identify the NEA charge or charges to which these appeals and denial letters related.

Plaintiffs now identify the relief they seek relating to the EOBs and denial letters, namely that the Court not afford the previous adverse benefits decisions any deference but review and analyze those decisions *de novo*. However, because Plaintiffs allege many

adverse determinations, they must identify the specific EOBs and denial letters that relate to each adverse determination. Plaintiffs fail to do so.

Plaintiffs argue that the only EOBs and denial letters they received are described in the Amended Complaint and that they cannot be faulted for failing to list or describe EOBs and denial letters that Defendant never sent to them. But, Plaintiffs do not allege this in their Amended Complaint, or at least, make this sufficiently clear to put Defendants on notice of it. Rather, they allege that "Defendant's denials of Plaintiffs' Claims in the EOB were deficient because they did not, for example, give adequate explanations or guidance as to how Defendant came to its conclusions." (#26 ¶ 34). While it appears Plaintiffs are now arguing that the EOBs and appeal denial letters were deficient because, except for the three denial letters mentioned in the Amended Complaint, they were never issued (*see* #33 at 14) for any of the identified services, Plaintiffs do not allege so in their Amended Complaint.

Plaintiffs argue that Defendant can locate the relevant EOBs and benefit denial letters based on Plaintiffs' Claims chart in their Amended Complaint. Defendant's "alleged knowledge of the claims or the plan terms cannot cure these pleading defects," however. *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, 2018 WL 4211741, at *5 (W.D. Tex. Sept. 4, 2018) (citing *Mora v. Albertson's, L.L.C.*, 2015 WL 3447963, at *3 (W.D. Tex. May 28, 2015) ("[F]ederal pleading standards require complaints to be facially sufficient .... When a complaint contains insufficient facts to state a plausible claim to relief, it is irrelevant whether the parties have knowledge of unstated facts that would cure the defect.")).

Plaintiffs have not identified the EOB and appeal determinations for which they are seeking redress and have failed to provide Defendant notice of these claims under Count I. Thus, the Court recommends that Plaintiffs' claim for failing to provide an adequate explanation of benefit determination within Count I be dismissed without prejudice.

### B.     Count II

Count II is a claim for other appropriate relief and to redress violations of ERISA and enforce the terms of the Plan and ERISA under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) provides that a beneficiary may bring a lawsuit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiffs appear to bring three claims within Count II.

First, Plaintiffs allege Defendant violated 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3 by failing to specify which method the Plan used to calculate the Allowable Charge for out-of-network services. Second, Plaintiffs allege Defendant violated 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3 by materially changing the 2013 SPD's reimbursement terms without amending the 2013 SPD or providing notice to Plan participants. For these two claims, Plaintiffs request equitable relief including, but not limited to, an order that Defendant pay for the Claims based on NEA's total charges, and injunctive and declaratory relief to ensure that Defendant complies with its obligations under the Plan.

Third, Plaintiffs allege that Defendant breached its fiduciary duty in violation of 29 U.S.C.§ 1104(a). Plaintiffs assert they are entitled to relief under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109 on account of Defendant's breaches of fiduciary duty, including such equitable or remedial relief as the Court may deem appropriate.

Defendant argues Count II should be dismissed because it is barred by the statute of limitations and fails to state a claim.

#### 1.     Statute of Limitations

Defendant argues ERISA's statute of limitations for breach of fiduciary duty bars Plaintiff's entire Count II. Plaintiffs respond that Defendant's statute of limitations argument only deals with Plaintiffs' claims under 29 U.S.C. § 1132(a)(3) and that their claims related to violations of the other statutes are not time-barred.

Within Count II, Plaintiffs allege violations of 29 U.S.C. § 1022 and § 1024(b) and breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and § 1109. In their Response,

Plaintiffs clarify that these allegations are not standalone claims, but rather, are part of their overall claim for equitable relief under 29 U.S.C. § 1132(a)(3). (*See* #33 at 21-22). Thus, Plaintiffs concede that, despite alleging various violations of ERISA within Count II, all those alleged violations fall under 29 U.S.C. § 1132(a)(3).

However, the Amended Complaint appears to bring two sets of claims for equitable relief under 29 U.S.C. § 1132(a)(3). One set of claims alleges breach of fiduciary duty under ERISA's "catch-all" provision, 29 U.S.C. § 1132(a)(3). (*See* #26 at ¶¶ 70-76). For these claims, the statute of limitations for breach of fiduciary duty applies. *George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1041 (N.D. Ill. 2009). The other set of claims appears to be brought pursuant to the ERISA's civil enforcement provision in 29 U.S.C. § 1132(a)(3). (*See* #26 at ¶¶ 57-69).

These claims presumably brought under ERISA's civil enforcement provision allege that Defendant's actions violated ERISA under 29 U.S.C. § 1022 and § 1024(b). While the alleged violations of 29 U.S.C. § 1022 and § 1024(b) serve as a partial basis for Defendant's alleged breaches of fiduciary duty, they are also separately brought under the civil enforcement provision in 29 U.S.C. § 1132(a)(3). To the extent the claims for violations of 29 U.S.C. § 1022 and § 1024(b) and their accompanying regulations are brought under the civil enforcement provision, they are not subject to the limitations period for breach of fiduciary duty. *See Pohl v. McCaffrey*, 2006 WL 208710, at *4 (N.D. Ill. Jan. 25, 2006).

As it relates to the claims alleging breach of fiduciary duty, ERISA provides that no action for breach of fiduciary duty may be brought after the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Defendant argues ERISA's three-year statute of limitations bars Plaintiff's claims. "To trigger the three-year statute of limitations," a plaintiff must "must have 'actual knowledge' of the alleged breaches of fiduciary duty." *George*, 674 F. Supp. 2d at 1041 (citing 29 U.S.C. § 1113(2)). For a plaintiff to have actual knowledge of an ERISA violation, it is not enough that he "'had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues.'" *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1086 (7th Cir. 1992) (quoting *Radiology Center, S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1221 (7th Cir. 1990)). However, it is unnecessary for a plaintiff to "have knowledge of every last detail of a transaction, or knowledge of its illegality." *Id.* Instead, the "relevant knowledge for triggering the statute of limitations is knowledge of the *facts* or *transaction* that constituted the alleged violation." *Id.* (emphasis in original).

Plaintiffs allege Defendant breached its fiduciary duty by (1) failing to follow the terms of the Plan, failing to properly adjudicate and pay Plaintiffs' Claims, and arbitrarily and unreasonably determining not to pay Plaintiffs' Claims; (2) utilizing an unreasonably low Allowable Charge and increasing the portion of billed charges for which Plaintiffs may be responsible; and (3) failing to provide an SPD with a detailed description of the Plan benefits and description of cost-sharing provisions and amounts for which the participant or beneficiary may be liable, and failing to provide written disclosure to participants and beneficiaries with respect to a material reduction in covered services or benefits under the Plan. Importantly, Plaintiff's Amended Complaint is silent as to when Plaintiffs learned of these alleged breaches of fiduciary duty.

As noted above, ERISA's statute of limitations is an affirmative defense, and a claim may be dismissed on that basis only if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Lewis,* 411 F.3d at 842. Because Plaintiff's Amended Complaint is silent as to when Plaintiffs learned of these

alleged breaches of fiduciary duty, the Amended Complaint does not set forth everything necessary to satisfy the statute of limitations affirmative defense.

Defendant argues Plaintiffs knew all the facts they needed to bring their claims in early 2017. Defendant bases this argument on Plaintiffs' allegations that starting in February 2, 2017, for Wenninger, and January 16, 2017, for Syrstad, the Plan started paying 10% of the usual and customary rate for the same medical services. Plaintiffs further allege the Plan "must have materially modified its handling of Plan participants claims, because as of the earliest date of service above, Defendant's application of those terms resulted in Plaintiffs … receiving significantly reduced payments." (#26 ¶ 66).

Despite these allegations, to find in Defendant's favor, the Court would need to draw inferences against Plaintiffs, which the Court is not permitted to do at this stage. *Iron Workers St. Louis Dist. Council Pension Fund v. Zenith Am. Sols., Inc.*, 2014 WL 3563295, at *2 (N.D. Ill. July 17, 2014). Thus, because the Amended Complaint's allegations do not set forth everything necessary to satisfy the statute of limitations affirmative defense, the Court recommends that the District Court deny Defendant's request to dismiss Plaintiffs' claims under 29 U.S.C. § 1132(a)(3) within Count II as time-barred.  Again, this argument can be raised later once the facts are more fully developed.

### B.     Failure to State a Claim

As noted above, Plaintiffs' Count II alleges claims for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) for failing to provide methodology under 29 U.S.C. § 1022, failing to disclose a material modification under 29 U.S.C. § 1024(b), and for breaches of fiduciary duty under 29 U.S.C. § 1104(a) as well as 29 U.S.C. § 1132(a)(2) and 29 U.S.C.  § 1109.

Defendant argues all of Plaintiffs' claims for equitable relief under 29 U.S.C. § 1132(a)(3) should be dismissed for failure to state a claim.

### 1.     Failure to Provide Methodology

29 U.S.C. § 1022 provides that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries," which contains all the information set forth in 29 U.S.C. § 1022 and the accompanying regulation, 29 C.F.R. § 2520.102-3. For group health plans, the summary plan description must include "a

description of: any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible … and whether, and under what circumstances, coverage is provided for out-of-network services…." 29 C.F.R. § 2520.102-3(j).

Plaintiffs allege Defendant failed to comply with these requirements because the 2013 SPD does not provide a detailed description of the cost-sharing provisions applicable to out-of-network benefits. Specifically, Plaintiffs allege that while participants and beneficiaries are responsible for paying the difference between the billed amount and the Allowable Charge, the SPD does not specify what method the Plan uses to calculate the Allowable Charge, leaving participants and beneficiaries without knowledge of how much they may be liable in cost-sharing under the Plan.

Defendant argues Plaintiffs have failed to state a claim as a matter of law in this regard because ERISA does not require a SPD to contain specific methodology for calculating in-network or out-of-network claims.

The 2013 SPD provides as follows:

**Allowable Charge:**

- With respect to a network (PPO) provider, the term "Allowable Charge" is the negotiated fee/rate set forth in the agreement with the participating network professional provider, facility or organization and the Plan.

- With respect to an out-of-network (non-PPO) provider, the "Allowable Charge" means the amount determined by the Board of Trustees that the Plan will pay for a particular service or supply, as determined by the organization with which the Fund contracts to make such a determination. Under no circumstances will the Plan pay an Allowable Charge for out-of-network services or supplies that is determined by any provider, facility or other person or organization other than the Board of Trustees, or organization designated by the Board of Trustees.

- The Board of Trustees has determined Allowable Charge to mean the amount most consistently charged by a licensed physician or other professional provider for a given service. An Allowable Charge refers to a charge that is within the range of usual charges for a given service billed by most physicians or other professional providers with similar

training and experience in a given geographic area. When considering the range of usual charges, the Plan may consider discounted rates allowed by network providers as a basis for Allowable Charges.

(#1, Ex. 1 at 14).

The 2013 SPD also provides:

- **Coinsurance:** Once you or your dependents meet the Deductible, the Plan pays a percentage of Covered Medical Expenses and you pay the rest. Benefits are paid based on Allowable Charges for the duration of an Injury or Sickness. The Coinsurance percentage the Plan pays varies depending on whether you use a PPO or non-PPO provider. If you or your dependent use a:

  - *PPO provider,* the Plan pays 90% of Allowable Charges, which requires you to pay the remaining 10% of Covered Medical Expenses, up to the Out-of-Pocket Maximum; or

  - *Non-PPO provider,* the Plan pays 75% of Allowable Charges, which requires you to pay the remaining 25% of Covered Medical Expenses, up to the Out-of-Pocket Maximum.

(#1, Ex. 1 at 39-40).

Plaintiffs allege the above cited provisions are insufficient pursuant to ERISA's disclosure requirements in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3(j) because the 2013 SPD does not contain the methodology for calculating out-of-network Allowable Charges. Neither party cites any direct Seventh Circuit authority on this issue. Plaintiffs argue that because Defendant does not point to any controlling Seventh Circuit authority, and because all inferences must be drawn in the light most favorable to Plaintiffs at this stage, the Court should deny Defendant's request to dismiss this claim.

While neither party cites a Seventh Circuit case on this issue (and the Court could find none), courts that have addressed this and similar issues have determined that the language in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3(j) does not require an SPD to list "information concerning the methodology for determining [usual, customary, and reasonable] amounts in particular, or more generally, for calculating the amount owed to the participant or beneficiary on an [out-of-network] claim." *Franco v. Connecticut Gen.*

28

*Life Ins. Co.*, 818 F. Supp. 2d 792, 822 (D.N.J. 2011), *aff'd in part, vacated in part on other grounds, remanded,* 647 F. App'x 76 (3d Cir. 2016).

As another court put it, "[c]ourts which have considered the scope of an ERISA fiduciary's disclosure obligations in similar contexts have overwhelmingly concluded that they do not extend to disclosure of UCR methodology or physician reimbursement schedules, and that courts 'should not add to the specific disclosure requirements that ERISA already provides.'" *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 921 (C.D. Cal. 2012) (quoting *Ehlmann v. Kaiser Found. Health Plan,* 198 F.3d 552, 555 (5th Cir. 2000)) (colleting cases).

This Court agrees with the court in *Franco* and the related cases cited above. Neither the language in 29 U.S.C. § 1022 nor 29 C.F.R. § 2520.102-3(j) requires the SPD to contain the specific methodology for calculating out-of-network Allowable Charges.

In response, Plaintiffs argue that if a methodology was not disclosed in the 2013 SPD itself, Defendant was required to alternatively disclose the methodology after Plaintiffs' Claims were denied or not fully paid, which it failed to do. In support, Plaintiffs cite *Morris v. Aurora Network Plan*, where the court denied a motion to dismiss for failure to disclose the methodology used in that case. 465 F. Supp. 3d 868, 872 (E.D. Wis. 2020). Plaintiffs also cite *Griffin*, where the Seventh Circuit held the defendant plan was required to produce fee schedules. 909 F.3d at 846-47.

*Morris* and *Griffin* are distinguishable from the instant case. *Morris* involved the defendant plan failing to disclose its methodology *after* a claim was made and *after* the plaintiffs requested the methodology. 465 F. Supp. 3d at 872, 877. Similarly, in *Griffin*, the defendant plan failed to produce fee schedules when the plaintiff requested them *after* the plaintiff's claim had been denied. 909 F.3d at 846-47. Here, however, Plaintiffs never allege that they requested the methodology after any of their Claims were denied.

Because the language in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3(j) does not require the SPD to contain the specific methodology for calculating out-of-network Allowable Charges, Plaintiffs fail to allege a violation of ERISA in this respect. Therefore, Plaintiffs do not plausibly allege a violation of 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-

3(j), enforceable pursuant to 29 U.S.C. § 1132(a)(3), and accordingly, the Court recommends that this claim within Count II be dismissed.

### 2. Failure to Disclose a Material Modification

29 U.S.C. § 1024(b) provides that "[i]f there is a modification or change described in section 1022(a) of this title that is a material reduction in covered services or benefits provided under a group health plan," then the plan administrator must provide "a summary description of such modification or change … to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change." 29 U.S.C.A. § 1024(b).

Similarly, 29 C.F.R. § 2520.104b-3(d) provides:

the administrator of a group health plan … shall furnish to each participant covered under the plan a summary, written in a manner calculated to be understood by the average plan participant, of any modification to the plan or change in the information required to be included in the summary plan description … that is a material reduction in covered services or benefits not later than 60 days after the date of adoption of the modification or change.

29 C.F.R. § 2520.104b-3(d).

A "material reduction in covered services or benefits" includes a change that "reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis for making benefit determinations…." 29 C.F.R. § 2520.104b-3(d).

Plaintiffs allege Defendant violated 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3(d) by failing to provide a summary description of a material modification of the Plan. Specifically, Plaintiffs allege that, at some point at or near the earliest date of service noted in their Claims chart, Defendant materially modified its handling of Plan participants' claims, which resulted in Plaintiffs receiving significantly reduced payments as compared to their similarly situated Plan participants and their service providers that Defendant paid before Plaintiffs' Claims arose. For instance, Plaintiffs allege that after Defendant's undisclosed, material modification of its handling of Plan participants'

claims, Defendant began paying less than 10% of the usual and customary rate for said services.

Plaintiffs assert that due to the Plan Administrators' failure to comply with its statutory obligations, Plaintiffs were unaware that the benefits the Plan would pay would be significantly less than what Defendant previously paid other Plan participations and providers. For relief, Plaintiffs seek an order that Defendant pay the Claims based on NEA's total charges, which they assert is specifically authorized under the Plan.

Defendant argues that this claim fails because Plaintiffs do not cite any undisclosed modification to Defendant's plan documents. Defendant's argument is unconvincing. Plaintiffs allege that at some point at or near the earliest date of service noted in their Claims chart, Defendant began paying less than 10% of the usual and customary rate for medical services such as those at issue here without amending the 2013 SPD or providing any notice of Plan modifications to Plaintiffs. These allegations are sufficient to state a claim for equitable relief under § 1132(a)(3) for a violation of 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3(d). *See Morris*, 465 F. Supp. 3d at 874.

Defendant also argues Plaintiffs failed to cure the deficiencies that the Wisconsin District Court previously directed Plaintiffs to cure. In its Order dismissing Plaintiff's original Complaint, the Wisconsin District Court stated:

> The complaint's allegations concerning a Plan modification or reduction in benefits are also deficient. The gist of this claim seems to be that because the plaintiffs believe that the Plan has paid less for NEA's services than it paid "to other providers in the past for similar services," the Plan must have modified its practices at some point in time. (Compl. ¶ 58.) But the complaint does not allege the approximate time frame in which the plaintiffs noticed a difference in reimbursement levels or allege when the plaintiffs believe that a Plan modification occurred. It is not even clear whether the plaintiffs think that the modification occurred prior to 2016, when the plaintiffs first received services from NEA, or whether they think that it occurred at some point during the multi-years periods in which they received treatment. The Plan cannot be expected to investigate these vague allegations about a modification that the plaintiffs subjectively believe occurred at some unknown moment in time.

(#25 at 12).

Contrary to Defendant's argument, Plaintiffs have cured the deficiencies noted by the Wisconsin District Court. Plaintiffs allege the approximate time frame they believe the Plan modification occurred. Specifically, Plaintiffs allege that "[f]or several years after Defendant committed to the terms of the 2013 SPD, Defendant paid out to other Plan participants who had similar medical services to the medical services in this lawsuit at an amount that was at, or substantially near, the usual and customary rate that charged for those medical services." Plaintiffs further allege, "at some point at or near the earliest date of service noted above," i.e., February 2, 2017, Defendant materially modified its handling of Plan participants' claims. (#26 ¶¶ 25, 65, 66).

Drawing all inferences in Plaintiffs' favor, Plaintiffs sufficiently state a claim for equitable relief under § 1132(a)(3) for a violation of 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3(d). Thus, the Court recommends that Defendant's motion to dismiss this claim within Count II be denied.

### 3.      Breaches of Fiduciary Duty

Under 29. U.S.C. § 1104(a), fiduciaries, such as the Board members, must discharge their duties solely in the interest of the participants and for the exclusive purpose of providing benefits to participants and to do so "in accordance with the documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1). Under ERISA, any plan fiduciary who breaches its fiduciary duties is "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. A participant may bring a claim for breach of fiduciary duty on behalf of the Plan under 29 U.S.C. § 1132(a)(2), which authorizes "appropriate relief under section 1109 of this title[.]" *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

Within Count II, Plaintiffs allege breach of fiduciary duty, in part, under 29 U.S.C. § 1132(a)(2) and § 1109. Defendant argues Plaintiffs' claims under 29 U.S.C. §1132(a)(2) and §1109 are duplicative and not standalone claims and should therefore be dismissed. In their Response, Plaintiffs clarify that these allegations are not standalone claims, but rather, are raised as part of their overall claim for equitable relief under 29 U.S.C. § 1132(a)(3).

However, Plaintiffs' Amended Complaint asserts that "Plaintiffs are entitled to relief 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109, on account of Defendant's breaches of fiduciary duty, including such equitable or remedial relief as the court may deem appropriate." (#26 ¶ 76). This implies a standalone claim under 29 U.S.C. § 1132(a)(2) and § 1109. Under § 1132(a)(2), a plan participant or beneficiary may only bring appropriate relief under § 1109(a) "on behalf of the plan, not in her own behalf." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 481-82 (7th Cir. 2010). Plaintiffs, however, only bring claims on their own behalf. Thus, to the extent Plaintiffs' Amended Complaint raises a standalone claim under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109, the Court recommends it be dismissed with prejudice.

Breach of fiduciary actions not on behalf of a plan but on behalf of an individual may be brought under ERISA's "catch-all" provision, 29 U.S.C. § 1132(a)(3). *Rice ex rel. Rice v. Humana Ins. Co.*, 2007 WL 1655285, at *2 (N.D. Ill. June 4, 2007). Plaintiffs bring a claim for breach of fiduciary duty under 29 U.S.C.§ 1104(a) pursuant to 29 U.S.C. § 1132(a)(3). To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) the defendant is a plan fiduciary, (2) the defendant breached its fiduciary duties, and (3) the breach caused harm to the plaintiff. *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 848 (N.D. Ill. 2006).

Here, Plaintiffs allege that Defendant, as the Plan Administrator, is the named fiduciary of the Plan. Plaintiffs allege that Defendant breached its fiduciary duties by (1) failing to follow the terms of the Plan, failing to properly adjudicate and pay Plaintiffs' Claims, and arbitrarily and unreasonably determining not to pay Plaintiffs' Claims; (2) utilizing an unreasonably low Allowable Charge and increasing the portion of billed charges for which Plaintiffs may be responsible, thereby causing them injury;  and (3) failing to comply with both 29 U.S.C. § 1022 and 29 U.S.C. § 1024(b), causing injury to Plaintiffs in that they were unaware of the amount and extent of their cost-sharing liability for the Claims.

To the extent the alleged violations of 29 U.S.C. § 1022 and § 1024(b) are brought both under the civil enforcement provision in 29 U.S.C. § 1132(a)(3) and as a claim for

breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), they are duplicative of each other. *See Morris*, 465 F. Supp. 3d at 876. Thus, the Court recommends that any claim for breach of fiduciary duty based on the alleged violations of 29 U.S.C. § 1022 and § 1024(b) be dismissed. Further, the Court has already recommended that the claim based on a violation of 29 U.S.C. § 1022 be dismissed as a matter of law for failure to state a claim.

The remaining alleged violations for breach of fiduciary duty allege the same underlying conduct as Plaintiffs' claims under 29 U.S.C. §1132(a)(1)(B). Many courts in the Seventh Circuit have dismissed claims brought under 29 U.S.C. §1132(a)(3) when a plaintiff also brings claims under 29 U.S.C. §1132(a)(1)(B) if the claims seek essentially the same relief and are based on the same underlying conduct. *See, e.g.*, *Craft v. Health Care Serv. Corp.*, 2016 WL 1270433, at *5 (N.D. Ill. Mar. 31, 2016). However, "this rule does not apply in cases where a significant portion of the plaintiffs' requested relief is not available under section 1132(a)(1)(B)." *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129, at *9 (N.D. Ill. Feb. 22, 2022).

Here, under their 29 U.S.C. §1132(a)(3) claims, Plaintiffs seek "such equitable relief as is appropriate … including that Defendant be required to pay the Claims based on the total amounts charged by NEA." Construing the Amended Complaint in the light most favorable to Plaintiffs, it can be read as seeking a reformation of the Plan terms to require Defendant to pay Plaintiffs at the rate they reasonably expected to be paid, given Defendant's alleged failure to adequately inform Plaintiffs of a material modification in the Plan terms. *See Morris*, 465 F. Supp. 3d at 875. Thus, Plaintiffs' claim for equitable relief for failing to disclose a material modification of the Plan terms in violation of 29 U.S.C. § 1024 seeks a sufficiently distinct remedy as that sought in their claim for benefits under §1132(a)(1)(B).

However, Plaintiff's claim for the equitable relief based on Plaintiff's breaches of fiduciary duty seeks essentially the same relief and is based on the same underlying conduct as Plaintiff's claim for benefits under §1132(a)(1)(B). Thus, the Court recommends that Plaintiff's claim alleging breaches of fiduciary duty within Count II be dismissed.

**IV.    Conclusion**

For the reasons discussed above, the Court recommends that Defendant's Partial Motion to Dismiss (#29) be GRANTED in part and DENIED in part. Specifically, the Court recommends:

1) That the District Court deny Defendant's motion to dismiss Plaintiffs' claim for benefits within Count I;

2) That the District Court dismiss Plaintiffs' claim for failing to provide the necessary explanation for Defendant's benefit determination within Count I;

3) That the District Court dismiss Plaintiffs' claim for failure to provide methodology in violation of 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3(j) within Count II;

4) That the District Court deny Defendant's motion to dismiss Plaintiffs' claim for failure to disclose a material modification in violation of 29 U.S.C. § 1024(b) and 29 C.F.R. § 2520.104b-3(d) within Count II; and

5) That the District Court dismiss Plaintiffs' claim for breach of fiduciary duty within Count II.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).


ENTERED this 21st day of August, 2024.


s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE